# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

**GENE B. PHILLIPS**
2202 Acacia Park Drive, Unit #2107
Lyndhurst, Ohio 44124

    and

**STEPHEN G. WEISS**
2202 Acacia Park Drive, Unit #2108
Lyndhurst, Ohio 44124

    and

**THE STEPHEN G. WEISS TRUST
DATED AUGUST 30, 2001**

    and

**THE FIRST AMENDMENT AND
RESTATEMENT DATED JULY 20, 2018
OF THE DAVID I. WEISS REVOCABLE
TRUST DATED AUGUST 14, 2014**

                  Plaintiffs

    -v-

**ACACIA ON THE GREEN
CONDOMINIUM ASSOCIATION, INC.**
2112 Acacia Park Drive, Unit #101
Lyndhurst, Ohio 44124-3848

    and

**SCOTT D. COHEN**
2112 Acacia Park Drive, Unit #225
Lyndhurst, Ohio 44124

:
:  CASE NO.
:
:  JUDGE:
:
:
:  MAGISTRATE:
:
:
:  **VERIFIED COMPLAINT AND MOTION
:  FOR PRELIMINARY AND PERMANENT
:  INJUNCTION**
:
:  (Violations of : Ohio Condominium law,
:  Declaration of Condominium Ownership and
:  By-laws, as well as Ohio laws governing not-for-
:  profit corporations, breaches of contract, and
:  non-discrimination against handicapped or
:  disabled housing dwellers under federal and Ohio
:  condominium and civil rights laws.)
:
:  Seeking money damages, injunctive relief, a
:  declaratory judgment and an accounting.
:
:  **JURY DEMAND ATTACHED.**
:
:
:
:
:
:
:
:
:
:

-1-



**RICHARD N. DETTLEBACH**       :
2112 Acacia Park Drive, Unit #2206    :
Lyndhurst, Ohio 44124-3853       :
                    :
     and          :
                    :
**WILLIAM A. DOYLE, JR.**       :
2205 Acacia Park Drive, Unit #2705    :
Lyndhurst, Ohio 44124-3858       :
                    :
     and          :
                    :
**LISA FLYNN**             :
c/o Acacia on the Green Condominium   :
2112 Acacia Park Drive, #101      :
Lyndhurst, Ohio 44124-3848       :
                    :
     and          :
                    :
**KENNETH JEVNIKAR**         :
10250 Cedar Road            :
Chesterland, Ohio 44026-3304      :
                    :
     and          :
                    :
**JOHN F. KLEIN**           :
2202 Acacia Park Drive, Unit #2501    :
Lyndhurst, Ohio 44124-3865       :
                    :
     and          :
                    :
**JAMES N. KLEINFELTER**       :
2202 Acacia Park Drive, Unit #2414    :
Lyndhurst, Ohio 44124-3855       :
                    :
     and          :
                    :
**RONALD A. KOPLOW**         :
2202 Acacia Park Drive, Unit #2114    :
Lyndhurst, Ohio 44124-3853       :
                    :

-2-

and                                    :
                                       :
**ALICE B. LICKER**                    :
3955 Deer Crossing Court, Apt. 104     :
Naples, Florida 34114-6403             :
                                       :
       and                             :
                                       :
**DIANE E. LOMBARDY**                  :
2112 Acacia Park Drive, Unit #424      :
Lyndhurst, Ohio 44124-3851             :
                                       :
       and                             :
                                       :
**MARVIN N. MILLER**                   :
The Atrium Apartments                  :
26300 Village Lane, Apt. 205           :
Beachwood, Ohio 44122-7545             :
                                       :
       and                             :
                                       :
**NINA H. ROTHMAN**                    :
2112 Acacia Park Drive, Unit #120      :
Lyndhurst, Ohio 44124-3848             :
                                       :
       and                             :
                                       :
**AMY W. WACHS**                       :
2202 Acacia Park Drive, Unit #2307     :
Lyndhurst, Ohio 44124                  :
                                       :
                    Defendants         :

        Now come Plaintiffs, Gene B. Phillips and Stephen G. Weiss, individually and as trustee of

plaintiff the Stephen G. Weiss Trust dated August 30, 2001 and as the agent and representative of

-3-

plaintiff The First Amendment and Restatement dated July 20, 2018 of the David I. Weiss

Revocable Trust dated August 14, 2014, by their undersigned counsel and for their complaint state

as follows:

## JURISDICTION AND VENUE

1.  This court has subject matter jurisdiction over this matter since it alleges violations of (a) the

condominium law of Ohio found in Chapter 5311, Ohio Revised Code and the recorded

Acacia on the Green Condominium (hereafter "AGC") Declaration of Condominium

Ownership and Bylaws which govern the Acacia on the Green Condominium Association,

Inc. (hereafter "AGCAI"), (b) breaches of Ohio law governing fiduciary duties by officers of

not-for-profit corporations found in Chapter 1702, Ohio Revised Code, (c) Ohio common

law for breaches of contract, (d) breaches of the federal Fair Housing Amendments Act of

1988 ("FHAA"), which secure certain civil rights of disabled and aggrieved persons such as

plaintiffs, as set forth in 42 U.S.C. §§ 3601, et seq., including §§ 3604(f )(2) and (3),

3613(a)(1)(A) and 3617, (e) the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. §§ 12001, et seq., and  (f) breaches of the Ohio civil rights law (R.C. §4112.02(H)

(19), (I) and (J)) prohibiting discrimination on account of handicap or disability by owners

and operators of covered dwellings against owners and damages against the defendants for

their wrongful acts, as well as (g) a declaratory judgment finding: (i) the existence of the

violations alleged above, (ii) to confirm Plaintiffs Phillips' and Weiss's deeds each

containing an easement allowing the use of gas grills on their respective patios, and (iii)

Plaintiffs seek preliminary and permanent injunctive relief against the Association and its

Board forbidding them from enforcing its current rule forbidding the use of gas grills on the

-4-

patios the Units owned on the first floors of Buildings 1 and 2 of the AGC, requiring said Defendants to conduct an audit and to make an accounting of AGCAI's financial and construction operations of AGC since January 1, 2012, removal of all current Board members, and for the Court to supervise an election of new Board members, among other injunctive relief, all of which are within this Court's subject matter jurisdiction.

2.  This court has further subject matter jurisdiction over this matter since it also alleges violations of the Unlawful Discriminatory Practices law of Ohio found in Ohio Revised Code, §§ 4112.02(H)(19), (I) and (J), which prohibit discrimination by any person in refusing "to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit, including associated public and common use areas," as well as because "any other person has opposed any unlawful discriminatory practice defined in this section," and for "any person to aid, abet, compel, or coerce the doing of an act declared by this section to be an unlawful discriminatory practice . . . or to attempt to directly or indirectly to commit any act declared . . . to be an unlawful discriminatory practice," as well as RC § 4112.051 (A)(1) and (D) which allow a civil action to enforce the rights granted by division (H) of section 4112.02 of the Revised Code to be filed in this court within one (1) year after it allegedly occurred.

3.  The action described herein has been timely filed.

4.  This court has in personam jurisdiction over the parties since they all reside in Ohio.

5.  Venue is proper before this court since all of the acts complained of occurred in Cuyahoga County.

Electronically Filed 05/02/2019 16:07 / / CV 19 914812 / Confirmation Nbr. 1698472 / CLSK1

## INTRODUCTION

6.      This case involves the failure of the Acacia on the Green Condominium Association, Inc.

("AGCAI") and defendants: Scott D. Cohen, Richard N. Dettlebach, William A. Doyle, Jr.,

John F. Klein, James N. Kleinfelter, Ronald A. Koplow, Alice B. Licker, Diane E.

Lombardy, Marvin N. Miller, Nina H. Rothman and Amy W. Wachs, individually and as

current or recent members of AGCAI's Board of  Board of Directors, and defendants

Kenneth Jevnikar and Lisa Flynn, individually and as employees of AGCAI, to lawfully and

properly manage the Acacia on the Green Condominium property in the following respects:

(a) by intentionally, knowingly and/or recklessly and in bad faith failed to administer the

property of AGC in accordance with (i) Ohio condominium law found in Revised Code,

Chapter 5311, (ii) AGC's Declaration of Condominium Ownership, (iii) AGCAI's By-Laws,

(iv) and in accordance with Ohio and Lyndhurst municipal building and/or fire code

requirements, (b) by exercising bad or poor financial and business judgment in keeping with

the best interests of AGC unit owners as members of AGCAI, the not-for-profit corporation

charged with the responsibility of managing the corporation's property and the affairs of

AGC; (c) by acquiescing in personal attacks by members of AGCAI's Board of Directors

against plaintiff Stephen G. Weiss and the belittlement of plaintiff Gene B. Phillips, (d) by

allowing AGCAI's employees, defendants Kenneth Jevnikar and Lisa Flynn, to exercise

excessive authority, favoritism, arbitrariness, and to act in bad faith in their dealings with

Plaintiffs and other AGC unit owners, (e) by either directing or acquiescing in the

preparation of minutes of Board meetings that contain false information, (f) by greatly

limiting unit owners, including Plaintiffs Phillips and Weiss, in speaking at Board and

-6-

AGCAI meetings, and (g) by AGCAI and defendants committing unlawful discriminatory acts against plaintiffs and other AGC unit owners contrary to the Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601, et seq.), the Americans with Disabilities Act (42 U.S.C. §§ 12001, et seq.), and Ohio Revised Code, §4112.02(H), (I) and (J).

7.   In addition, Plaintiffs seek preliminary and permanent injunctive relief by way of an order requiring an independent professional audit of AGCAI's financial records since January 1, 2012 to the present and an accounting by AGCAI for any and all improper handling of money that may be uncovered thereby, and to disclose any all failures of the Association to abide by federal, Ohio and Lyndhurst building laws and regulations, as well as to remove persons now serving as members of AGCAI's Board of Directors who may be found to have failed to carry out their responsibilities as a director.

8.   In addition, this case seeks an injunction requiring the election of a new members by the AGC unit owners to fill any vacancies left by any or all of those current Board members who may be found disqualified from continuing to serve by reason of their unlawful acts or failures to act.

9.   Plaintiff Gene B. Phillips and Plaintiff Stephen G. Weiss, as the former Trustee Unit Owner of the Stephen G. Weiss Trust dated August 30, 2001 and as the current designated representative and agent of the First Amendment and Restatement dated July 20, 2018 of the David I. Weiss Revocable Trust dated August 14, 2014, and both of whom (Phillips and Weiss) are also AGC residents who suffer from different handicaps, seek money damages from defendants AGCAI and each of the individually named defendants, Scott D. Cohen, Richard Dettlebach, William A. Doyle, Jr., John F. Klein, James N. Kleinfelter, Ronald A.

-7-

Koplow, Alice B. Licker,  Diane Lombardy, Marvin N. Miller, Nina H. Rothman and Amy

Wachs for their knowing, intentional and/or reckless failures to recognize and enforce

Plaintiffs' respective easements regarding the use and occupancy of their patios and

forbidding unit owners from using gas grills on their concrete patios as permitted by Ohio

and Lyndhurst fire safety laws.

10.    Plaintiff Gene B. Phillips and plaintiff Stephen G. Weiss, (for the period he was the trustee

of the Stephen G. Weiss Trust dated August 30, 2001 Unit Owner and now as the

representative and agent for David I. Weiss, Trustee) also seek a determination by this court

that unit owners, such as themselves in first floor units number 2107 and 2108, respectively,

who each have a concrete patio adjacent to their unit, had the right to use gas grills when

their building was converted to AGC, which right became in the Declaration an exclusive

easement to enhance the use and enjoyment of their said patios, subject only to the Fire

codes of Ohio, the City of Lyndhurst, AGC's Declaration of Condominium Ownership,

Article IX, Section 9.02(a)(ii) (governing the use and condition of gas grills located within

the Unit or the Limited Common Areas designated for use by the Unit or Owner), and any

reasonable rules governing their use properly adopted by AGCAI's board of directors.

11.     Plaintiff Stephen G. Weiss also seeks damages against individual defendants Scott D.

Cohen, William A. Doyle, Jr., John F. Klein, James N. Kleinfelter, Ronald A. Koplow,

Alice G. Licker,  Diane E. Lombardy, Nina Rothman, and Amy W. Wachs for their

acquiescence as Board members and fellow unit owners in defendant Richard N.

Dettlebach's and Marvin N. Miller's assaults of Weiss during the annual meeting of AGACI

in June, 2016 and their failure to censure Dettlebach and Miller for their criminal acts when

-8-

they occurred.

12.  Plaintiffs Weiss and Phillips also seek damages against defendant Scott D. Cohen for his acquiescence in the defendant AGCAI's continued enforcement of the rule forbidding their use of a gas grill on their patio.

13.  Both plaintiffs seek damages from defendants Kenneth Jevnikar and Lisa Flynn for their arbitrary and dictatorial refusals to accommodate their reasonable requests and those of other unit owners to facilitate their use and enjoyment of their respective living units, including, for example: (a) requests to install washers and dryers in their units, (b) requests to remove no-longer-used inter-com telephone boxes in their units, (c) insisting that handicapped or disabled unit owners who use a service dog dispose of their dog feces by using the an interior hallway trash chute rather then in a dumpster in the garage, (d) by their use of favoritism to allow some unit owners to store personal property in common element areas of the building contrary to AGCAI's rules, and by their preparation and dissemination of fake amended rules and regulations that were not approved by AGCAI's board of directors, among other examples.

14.  Lastly, plaintiffs seek damages from all defendants for their having acquiesced in defendant Kenneth Jevnikar's and Lisa Flynn's denial of the peaceful enjoyment of their respective condominium units.

## PARTIES

15.  Plaintiff Gene B. Phillips is the record unit owner and a resident of unit #2107 of AGC building 2.

16.  Plaintiff Phillips is now and for the past four years has been handicapped by virtue of

-9-

suffering from neuropathy that makes it difficult for her to walk without pain and necessitates her use of a cane.

17.  Ms Phillips' handicap condition was known at all relevant times by all the defendants by virtue of the way in which she could be seen walking slowly with obvious difficulty.

18.  Plaintiff Stephen G. Weiss, during the period May, 2012 - July 18, 2018, was the Trustee and beneficiary of plaintiff Stephen G. Weiss trust dated August 30, 2001 which was the record unit owner of AGC unit #2108 in building 2 until July 18, 2018.

19.  Weiss is now the designated representative and a power-of-attorney agent of The First Amendment and Restatement dated July 20, 2018 of the David I. Weiss Revocable Trust dated August 14, 2014, which currently is the record owner of AGC unit #2108.

20.  Plaintiff Weiss is now and at all times relevant was a resident of said unit.

21.  Plaintiff Weiss is handicapped by virtue of suffering from cancer and common variable immune deficiency which makes it difficult for him to walk for any but short distances.

22.  Mr. Weiss's handicap condition was known since at least 2016 from his having told several of the defendants when he was undergoing chemotherapy.

23.  There are other unit owners and/or residents who live at AGC who also are believed to be handicapped by reason of various physical conditions, some of which are associated with their being of advanced age.

24.  Plaintiffs aver that AGCAI has not adopted any policies or procedures which recognize its responsibilities as a provider of housing units which are subject to federal and Ohio laws outlawing discrimination on account of handicap or disability , including the Americans With Disabilities Act of 1990 ("ADA"), (42 U.S.C. §12101, et seq.), the Federal Housing

-10-

Amendments Act of 1988 ("FHAA"), (42 U.S.C. § 3401, et seq.), and Ohio Revised Code, §§ 4112.02(H) (19), (I) and (J), 4112.051(A)(1) and (D), and 4112.16 ("Civil Rights Commission").

25.    Moreover, AGCAI failed to follow the requirements of the ADA, FHAA and R.C. §4112.02 when it undertook to construct a new swimming pool, a new pavilion, and a new fitness center and card room in recent years so as to make them to be in compliance with said laws.

26.    AGC is the duly formed and registered Ohio condominium owner of certain real property located in Lyndhurst, Ohio. Its Declaration of Condominium Ownership was filed on April 29, 1980 with the Recorder (now known as the Fiscal Officer) of Cuyahoga County, Ohio. A copy of said Declaration is not attached due to its being voluminous in size and because each of the defendants either has a copy of same or has or had access to such document by reason of the defendant's current or previous relationship with AGC.  A copy will be produced upon specific requests for any defendant who may not have such document or may not have any access to same.

27.    Defendant Acacia on the Green Condominium Association, Inc. ("AGCAI") is the AGC unit owners' association which was incorporated as an Ohio not-for-profit corporation to administer AGC pursuant to the requirements of RC §§5311.05(B)(7) and 5311.08.

28.    Defendant Scott H. Cohen is the owner of unit #225 of AGC and is now and at various times material to this action was a member of AGCAI's board of directors ("Board").

29.    Defendant Richard N. Dettlebach is the owner of unit #2206 of AGC and is now and has been a member of AGCAI's Board since 2015.

30.    Defendant William A. Doyle, Jr., is the owner of Unit # 2705 in AGC and during June 2016

-11-

was a member of AGCAI's Board.

31.     Defendant Lisa Flynn at all material times was and is employed by AGCAI as the property

manager of AGC.

32.     Defendant Kenneth Jevnikar at all material times was and is employed by AGCAI as the

Maintenance Supervisor of AGC.

33.     Defendant John F. Klein is the owner of unit #2501 of AGC building 2 and has been a

member of the Board since 2015. He currently serves as the President of AGCAI and the

Board.

34.     Defendant James N. Kleinfelter is the owner of unit #2414 of AGC and has been a member

of the Board since 2017. He currently serves as the Treasurer of AGCAI and the Board.

35.     Defendant Ronald A. Koplow is the owner of unit #2114 of AGC building 2 and during

2017 was a member of AGCAI's Board.

36.     Defendant Alice B. Licker is now and has for many years been the owner of several units of

AGC. She served as a member of the Board during 2015 and 2016. She currently lives at

3955 Deer Crossing Court, Apt. 104, Naples, Florida 34114-6403.

37.     Defendant Diane E. Lombardy is the owner of unit #424 of AGC building 1 and has been a

member of the Board since 2016. She was the Treasurer of the Association and the Board

during some period of her service on the Board.

38.     Defendant Marvin N. Miller was the owner of unit #2216 of AGC building 2 beginning in

2012. From June, 2012 until April, 2018 he was President of the Association and the Board.

He moved from AGC in April, 2018 and now resides at The Atrium Apartments, 26300

Village Lane, Apt. 205, Beachwood, Ohio 44122-7545.

-12-

39.    Defendant Nina H. Rothman is the owner of unit #120 of AGC building 1 and is now and

       has been a member of AGCAI's Board since 2016.

40.    Defendant Amy W. Wachs is the owner of unit #2307 of AGC in building 2 and is now and

       has been a member of AGCAI's Board since 2016. She currently serves as Vice President

       of AGCAI and the Board.

### FACTS

41.    Plaintiff Weiss, beginning in 2012 and continuing until July 18, 2018, as Trustee of the

       Stephen G. Weiss Trust dated August 30, 2001, which owned AGC unit #2107, and Plaintiff

       Phillips, from December, 2002 until the present has owned unit AGC unit# 2108, both of

       whom reside in adjacent units located on the ground floor of AGC building number 2 that

       have concrete patios extending more than ten feet beyond the building with no unit

       immediately above portions of their respective units.

42.    There are several additional first floor condominium units located in AGC's buildings 1 and

       2 that also have similarly constructed adjoining concrete patios.

43.    In June, 2014 plaintiff Stephen G. Weiss asked defendant Marvin N. Miller for permission

       to use a gas grill on the concrete patio adjoining his unit #2108 to which Miller responded

       by saying: "give me some time."

44.    On June 8, 2015 Weiss wrote Miller a letter asking him again for permission to use a gas

       grill on his patio, suggesting that they put aside the differing opinions on this issue

       expressed by their respective lawyers and, in stead, follow the recommendations made by

       AGCAI's attorney, Joseph Cusimano, in 2005 and Lyndhurst Fire Captain David Holt, after

       the Ohio and Lyndhurst Fire Codes were amended so as to permit use of gas grills "as long

-13-

as they are 10 feet from any combustibles surrounding the grill in addition to being at least 15 feet below the balcony above as long as the grill is constantly attended and a 10 lb ABC type inspected extinguisher is hung correctly on the patio, unless there is a sprinkler system in place." See copy of Weiss's letter attached as Exhibit P0001.

45.     Defendant Miller denied Weiss's said request based upon Miller's erroneous belief that both Ohio law and the ordinances of the City of Lyndhurst forbid any use of a gas grill anywhere on a concrete condominium patio of the AGC.

46.     Defendant Miller also relied on the rule adopted by AGCAI's board of directors in 2010 that, for the first time, specifically prohibited the use of all gas grills on the concrete patios of AGC unit owners, irrespective of whether they would be used at least 10 feet away from and 15 feet underneath a combustible portion of the AGC building.  For copy of said rule, see Exhibit P0002 attached.

47.     The aforesaid rule prohibiting the use of gas grills on the concrete patios of AGC unit owners was contrary to both Ohio law and the fire ordinances of the City of Lyndhurst, which allow the use of such gas grills as long as they are 10 feet away from the side of a combustible building and 15 feet beneath any combustible surface, as well as being contrary to Article XI, Section 11.02 of the Declaration.  See Revised Code, § 3737.82 and Ohio Admin. Code 1301:7-7-03(A)(1) & 7-7(H), respectively, attached as Exhibits P0003 and P 0004 attached.  For copy of City of Lyndhurst fire code, see Exhibit P0001-d, attached.

48.     In addition, the aforesaid AGCAI rule forbidding the use of gas grills on patios was not adopted with the intent of making a reasonable accommodation to first floor AGC unit owners who have concrete patios for the enjoyment and use of their condominium units, as

-14-

required by Ohio condominium law, and by Ohio and federal non-discrimination law requiring reasonable accommodations for handicapped or disabled persons, but rather with the intent of totally forbidding their use irrespective of the aforesaid laws.

49.  AGCAI's Board of Directors by letter dated August 7, 2018 denied Plaintiff Gene B. Phillips the same right to use a portable gas grill on her concrete patio.  Copy attached as Exhibit P0005.

50.  Ms Phillips was told that there is a Board Rule that states: "Any form of cooking on the patio or balcony is prohibited."

51.  Plaintiff Phillips made a further request by letter dated August 29, 2018 to defendants Lisa Flynn and AGCAI to place a grill on her patio based upon the Fair Housing Amendments Act and her being disabled and in need of a reasonable accommodation. See copy attached as Exhibit P0006.

52.  AGCAI denied her request by letter dated September 7, 2018.  Copy attached as Exhibit P0007.

53.  The individually named defendants, Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker,  Lombardy, Miller, Rothman and Wachs, each knew or reasonably should have known that the aforesaid rule forbidding the use of gas grills which they adopted and/or enforced as members of the AGCAI's board of directors was based upon an incorrect understanding of what the fire codes of both Ohio and the City of Lyndhurst prohibited, as well as the aforesaid federal and Ohio non-discrimination laws and the easements granted in the Declaration, ARTICLE XI, section 11.02, to unit owners with adjoining concrete patios.

54.  The aforesaid defendants named in paragraph 53 above also knew or reasonably should have

-15-

known that the aforesaid rule prohibiting the use of gas grills was based upon an incorrect

and erroneous foregoing legal opinion expressed by attorney Joseph Cusimano, a partner in

the law firm of Kaman & Cusimano, LLC, which represents AGCAI.

55.   The relevant portion of the Ohio Fire Code (Ohio Admin. Code 1301:7-7-03(d) General

requirements (Ohio Administrative Code (2015 Edition)) provides:

> **(d) 308.1.4 Open flame cooking devices.** Charcoal burners and other open-flame cooking
> devices shall not be operated on combustible balconies or within 10 feet (3048 mm)
> of combustible construction.

**Exceptions:**
> 1. One- and two-family dwellings.
> 2. Where buildings, balconies and decks are protected by an automatic sprinkler
> system.
> 3. Where approved by the fire code official, charcoal burners are allowed to be
> operated on combustible balconies or within 10 feet (3048 mm) of combustible
> construction where all of the following conditions are met:
> 3.1. The charcoal burners are attended by an adult at all times when in operation.
> 3.2. Portable fire extinguishers in the type, quantity and size as approved by the fire
> code official are present on the combustible balconies or at the cooking site located
> within 10 feet (3048 mm) of combustible construction. Such portable fire
> extinguishers shall be in an operable condition at all times and maintained in
> accordance with NFPA 10 as listed in rule 1301:7-7-47 of the Administrative Code.
> 3.3. All non-structural combustible material must be removed from the combustible
> balconies or at the cooking site located within 10 feet (3048 mm) of combustible
> construction.
>  4. LP-gas cooking devices having an LP-gas container with a water capacity not
> greater than 2 ½ pound [nominal 1 pound (0.454 kg) LP-gas capacity]. For copy, see
> Exhibit P0004b, attached.

56.   The fire code of the City of Lyndhurst at all relevant times followed the Ohio Fire Code,

provided as follows:

Ordinance 2006-19, passed 2-6-06, provides in Chapter 1505.01, entitled "ADOPTION":

> There is hereby adopted by the Municipality, the Ohio Fire Code
> (OFC) as adopted and as hereinafter may be amended by the Ohio
> Division of State Fire Marshal, Department of Commerce, and as

-16-

published in Division 1301:7 of the Ohio Administrative Code
(OAC), including all appendices thereto.  See Exhibit P0019.

57.    The City of Lyndhurst updated its fire code by adopting the language cited in paragraph 56

above including the section before 308 as follows:

**307.1.1 Prohibited open burning**.
Open burning that is offensive or objectionable because of smoke
emissions or when atmospheric conditions or local circumstances
make such fires hazardous shall be prohibited.

In summary, charcoal grills and LP (Propane) grills may not be operated on
balconies.  They may be operated on non-combustible patios as long as they are 10
feet from any combustibles surrounding the grill in addition to being at least 15 feet
below the balcony above as long as the grill is constantly attended and a 10 lb. ABC
type inspected extinguisher is hung correctly on the patio, unless there is a sprinkler
system in place.

In addition, 307.1.1 means that if smoke emissions result in any complaints the
fire must be extinguished.

Capt. Dave Holtz, FPO Lyndhurst Fire Department.  For copy, see Exhibit P0019.

58.    The erroneous opinion stated to AGCAI's board of directors was prepared by attorney

Joseph Cusimano.  See Exhibit P0001-a.

59.    The aforesaid rule adopted by AGCAI's board of directors is found in Exhibit P0002.

60.    The aforesaid rule continues to be in force at the AGC, as evidenced by its re-issuance in

AGCAI's "Resident Rules and Information Handbook" adopted September 6, 2018,

effective October 1, 2018, in section IV, at page 9 as: "Any form of cooking on the patio or

balcony is prohibited.  Grills and any food preparation or food storage equipment are

prohibited on patios and balconies."  A copy of this handbook has not been attached since it

is voluminous and Defendants already have or can easily obtain a copy thereof.

61.    Defendant AGCAI's refusal to allow plaintiffs Phillips and Weiss to use gas grills on their

-17-

patios is contained in their letters to them dated August 7, 3018 (Phillips - Exhibit P0005) and September 7, 2018 (Exhibit P0008 - Weiss), both of which are attached.

62.    The aforesaid rule prohibiting the use of all gas grills on concrete patios at AGC is on its face unreasonable since it was adopted contrary to what Ohio and Lyndhurst laws permit, as well as to unit owners' easements, and to the requirement of Ohio's aforesaid condominium law that all rules be reasonable and fair.

63.    The aforesaid rule was also adopted in violation of the FHAA of 1988 which requires providers of housing, such as AGCAI, to make reasonable accommodations for handicapped or disabled residents and their guests to use and enjoy their housing units.

64.    Plaintiffs further allege that the defendant-current and former AGCAI board members, over the past several years exercised bad faith and/or willful and/or unlawful business and financial judgment in administering the affairs of AGC.

65.    Examples of such bad faith and/or willful and/or unlawful business and financial judgment include:

(a) The failure to adopt some or all of the following policies and procedures to guide the Board of Directors regarding:

     (i)     the type of accounting system to be used by AGCAI;

     (ii)    the manner and method of investing all cash received by AGCAI;

     (iii)   the manner and method of spending AGCAI's cash assets;

     (iv)   the persons needed to approve and the manner of approving all checks from AGCAI's accounts;

     (v)    the procedures to be followed with respect to enforcing collection of maintenance fees from unit owners, including the extent of delinquency

-18-

allowed before instituting foreclosure actions;

(vi)    the procedures to be followed with respect to payment of accounts payable;

(vii)    the process of periodically reviewing AGC's declaration of condominium ownership, as well as AGCAI's bylaws and rules and regulations;

(viii)    assuring that AGCAI's reserve fund would at all times be sufficient to maintain or replace any and all capital improvements comprising common elements of the AGC without necessitating special assessments on the unit owners;

(ix)    the circumstances when, for what reasons, and the extent to which the Board of Directors would be justified in borrowing money for making capital improvements to AGC;

(x)    to require its employees and contractors to always obtain necessary and proper building permits before starting any needed repair or improvement to AGC common elements and limited common elements which required same;

(xi)    to require all unit owners and their employees and contractors to always obtain necessary and proper building permits before starting any needed repair or improvement to their unit;

(xii)    to require all unit owners to submit plans and drawings for any changes in the layout or footprint of their units to the Board of Directors for approval before any proposed changes thereto will be made, so as to insure proposed changes will not adversely affect any other unit or any common or limited common element;

(xiii)    to require at least two competitive bids on all contracts entered into by AGCAI in such amount as determined by the Board of Directors from time to time;

(xiv)    explaining what type of budget the Association shall use each year in keeping with the requirement of submitting annual budgets to its unit-owner members; and

(xv)    affirming the Association's commitment to abiding by federal and Ohio requirements regarding nondiscrimination against handicapped or disabled unit owners and residents vis-a-vis the operation of the Association and management of AGC, including any and all new construction and improvement projects on AGC's common property; and

-19-

(xvi)  requiring the Association's Property Manager or other designated employee to timely respond to all unit owner requests to examine Association records as required by Ohio condominium law or to submit such requests to the Association's Board of Directors for guidance.

(b) The failure over several years to adopt annual budgets on or before December 1st each year, including 2018, as required by Article X, Section III "Budget and Assessments/By-Laws" of the AGC Declaration of Condominium Ownership;

(c) The failure over several years to submit annual budgets on or before December 15 each year, including 2017, to unit owners, as required by Article X, Section III "Budget and Assessments/By-Laws" of the AGC Declaration of Condominium Ownership;

(d) The failure over several years to adopt and amend budgets for revenues, expenditures, and reserves in an amount adequate to repair and replace major capital items in the normal course of operations without forcing the Association to incur one-half million dollars of indebtedness with the concomitant and new interest expense in order to pay for said repairs and replacements, as well as to add to the AGC property by constructing a new and unapproved picnic pavilion and swimming pool;

(e) The failure over several years to provide the necessary supplemental information regarding annual budgets to AGCAI's accountants to properly review and thereafter express an opinion or conclusion as to its character;

(f) The failure over several years to provide unit owners with the necessary information regarding future major repairs and replacements of common property, as required by the Financial Accounting Standards Board for placing AGCAI's basic financial statements in an appropriate operational, economic, or historical context;

-20-

(g) The failure to obtain necessary and proper building permits when building the new AGC pavilion and making other repairs and/or improvements to AGC;

(h The failure to obtain competitive bids from its contractors, including American International, Inc. and Impullitti Landscaping, Inc., thereby making it difficult, if not impossible, for the Association and all unit owners to benefit by reduced maintenance and replacement costs;

(i) The failure to insure that the major improvements undertaken by the Board of Directors to construct a new pavilion and swimming pool, respectively, would be compliant with the fire Code of Ohio and the City of Lyndhurst, as well as with federal and Ohio laws requiring accessibility by handicapped or disabled unit owners and their guests;

(j) The failure to obtain the prior approval of 75% of the unit owners' voting power before undertaking in 2016 to replace the swimming pool that the Board had determined was obsolete and in need of replacement, as required by Article XIII of the Declaration;

(k) The failure to obtain the prior approval of 90% of the unit owners' voting power before undertaking in 2016 to add to the AGC property by constructing a new picnic pavilion to adjoin the new swimming pool, as required by Declaration Article VIII, Sections (a) and (b);

(l) The failure to obtain the prior approval of 75% of the unit owners' voting power before eliminating in 2016 the Social Room located in AGC building 1 as obsolete and replacing it with a new exercise/fitness center and card room;

(m) The failure to offer accommodation to one or more handicapped or disabled unit owners by making the front and side entrance doors of the AGC buildings open and close electronically, as required by the FHAA of 1988;

-21-

(n) The failure to adopt a rule regarding use of service dogs by handicapped or disabled residents and their guests, especially by persons with limited vision, including the manner and place for disposing of feces;

(o) The failure of Defendant Jevnikar to allow unit owners who are handicapped, as an accommodation, to install a washing machine and dryer in their unit when their unit had such appliances before the buildings were converted to a condominium;

(p) The failure to maintain "a reasonable reserve for contingencies and replacements" so as to make it unnecessary to borrow Five Hundred Thousand Dollars ($500,000) in 2016 to make various unapproved capital repairs, replacements and improvements to the common elements of the AGC; and

(q) The failure to require that competitive bids be obtained and reviewed by the Board prior to entering into all contracts requiring the expenditure of large sums of money by the Board on behalf of AGCAI.

66. On April 4, 2016 Plaintiff Weiss gave a written memo to defendants Flynn as Property Manager and to the then AGC board members in which he recited the board policy of all unit owners directing their concerns and questions for the board to the Property Manager in writing and *not* to individual board members, since this would "assure that [their] concerns and questions are properly addressed and answered [impliedly by the board]." For copy of this memo, see Exhibit P0009.

67. In his aforesaid memo Weiss related the conversation he had with defendant Kenneth Jevnikar as Maintenance Supervisor on March 28, 2016 during which Jevnikar had expressed his "strong objections to the letters [Weiss] had written the board and asked 'why

-22-

did I [Weiss] move here'" which was "none of his business. He [sic] attitude was condescending, authoritative with an air of being a bully. He asked me why don't you sue and that he would love to see a law suit," which was rude and distasteful.

68. Plaintiff Weiss then reported in his memo that Jevnikar then began quoting the Declaration, Bylaws and the supplement rule book as to what a unit owner could and could not do.

69. Weiss ended his aforesaid memo by asking for a copy of the minutes that authorized Jevnikar to do this (that is, to tell a unit owner what he or she can or cannot do), which minutes were never produced as requested.

70. On May 23, 2016 the Board sent a letter to Mr. Weiss in which it said that it had sought and obtained legal advice which allowed it to continue prohibiting the use of gas grills and grilling on both balconies and patios, advised that the Board was legally allowed to adopt rules that exceeded the State mandated the "minimum" fire code requirements regarding gas grills, and interpreted the history of AGC as not allowing such grills for over 25 years.  See copy of this letter attached as Exhibit P0011.

71. In May, 2016, at the Association's "Meet-the-New-Candidates" meeting, defendant Amy W. Wachs was introduced as a candidate running to become a Board director.

72. Wachs ran for a Board position based on her promise to do something about the favoritism that was practiced by defendants Jevnikar, Flynn and/or Board President Miller.

73. Plaintiff Weiss engaged in a lively discussion with Ms Wachs at said meeting which Plaintiff Phillips questioned her,  along with other attendees, about her ability to stand up to current board members.

74. While Weiss and Phillips were talking, defendant Dettlebach became extremely angry and

-23-

came over to Weiss, grabbed him by the collar and physically pulled him away from

standing near Wachs, all the while yelling at him "to leave her alone" and "you have no right

to ask her that [referring to favoritism]."

75. When Dettlebach expressed his anger at Weiss, defendant Miller intervened to calm

Dettlebach down by physically pulling him away from Weiss.

76. As Plaintiff Phillips was walking back to her apartment with Dettlebach, he minced no

words in expressing his negative thoughts about Weiss's determination to get permission for

a gas grill on his patio, stating "he has been told twice 'no' and he keeps coming back" and

"enough is enough."

77. At the same May, 2016 candidates meeting Plaintiff Weiss also expressed his concerns to

the board regarding what seemed like favoritism to several residents.

78. When defendant Miller asked Weiss for proof of these incidents, Weiss provided some

photographs that showed a tall storage cabinet located on a unit owner's patio and a large

plant located outside Defendant Doyle's front door.  For copy, see Exhibit 10 attached.

79. Soon after the May, 2016 candidates meeting board member, Defendant Doyle sent a letter

to Weiss in which he expressed having taken offense with Weiss's accusation that the board

ignores enforcing Association rules for favored persons. For a typed copy of Doyle's letter

see Exhibit P0012.

80. Doyle also explained that he had put up a holiday [i.e., Christmas] display of lights on his

balcony railing only after researching AGC documents and Association rules, and that the

wreath he hung on his front door and the plant were "not visible to anyone except his next

door neighbor and the occasional snooper," although Weiss's concern was "well taken."

-24-

81. Doyle then said he wondered why Weiss was "not in an uproar over the religious artifacts that are affixed to the hallway door frames of approximately 90% of the units [referring to mezuzahs – the one by six inch box containing a portion of the Torah which every observant Jew is required to post on the frame of every entrance to his or her dwelling], one of which is yours," which "symbols are generally screwed or nailed into the wood, which will leave a hole once removed." Exhibit P0012.

82. Doyle then said "Are you ignoring this massive, in number only, rules violation because it suits your own religious desires?" Exhibit P0012.

83. Doyle then said **"As a Christian and owner, I don't have a problem with it yet,** based on your strict belief that rules must be equally enforced, this practice needs to be stopped and the offending items removed ASAP. I leave enforcement of that up to you!" See Exhibit P0012, emphasis in original.

84. Before the annual meeting of the AGCAI on June 2, 2016 Weiss and Doyle met without previous planning in the garage where Doyle suggested to Weiss that he come to the meeting and speak about his concerns with the operation of AGC.

85. Weiss did attend the June 2, 2016 annual meeting and distributed an abbreviated summary of Doyle's aforesaid letter to the attendees.

86. Defendant Miller decided to start the meeting by allowing plaintiff Weiss to briefly, rather than having him speak at the end of the meeting when unit owners often attend and express their concerns, as usually was done.

87. With as sneer on his face Miller called Weiss to the front by saying: "Okay, Steve, come up," implying that he had to do this, but that he (Miller) really didn't want to have him

-25-

do so.

88.    Then, within a couple of minutes, Miller cut Weiss off, saying "your two minutes are up."

89.    Miller had not mentioned to Weiss or anyone else that evening that attendees had only two minutes each to speak.

90.    Someone in the audience then asked defendant Doyle a question based on what Weiss had said to him (Doyle) but, rather than answering, Doyle took the opportunity to demean Weiss and deny that he had invited him to the meeting.

91.    At no time did defendant Miller or any other board member attempt to stop Doyle from making inflammatory comments to Weiss, or attempt to present another point of view, or indicate that Doyle's behavior was not acceptable as a board member.

92.    Plaintiff Phillips expressed the foregoing allegations contained in paragraphs 84-90 above in a June 2, 2016 letter to the AGCAI board asking it to correct the annual meeting minutes which contained statements Weiss had not made and omitted statements he had made. See copy attached as Exhibit P0014.

93.    Plaintiff Weiss on June 13, 2016 wrote to defendant Miller in which he said that Miller's agreement with Doyle's aforesaid letter was unacceptable and objected to Miller's comments that Weiss was "childish" and in which he recounted his recent efforts to resolve the "grill issue" with the board, citing the fact that he had presented a legal opinion supporting his position.  For copy of this letter see Exhibit P0015.

94.    During the night of February 22, 2017 defendant Dettlebach questioned Weiss as to what Weiss was doing in the AGC parking lot, in a manner that made it appear that Weiss was doing something criminal.

-26-

95.  On February 27, 2017 Weiss wrote a letter to defendant Miller reporting Dettlebach's (mistakenly spelled "Duttlebeck") questioning and reminding Miller of Dettlebach having assaulted him at the previous annual AGC meeting, but also reminding him of defendant Klein having reported to him that the Board had felt required to speak to defendant Doyle about his letter to him.  For copy, see Exhibit P0016.

96.  He also informed Miller in his February 27, 2017 letter that as board president he was responsible for correcting the personal attacks and harassment that he and other Board members were making on him, as well as Miller's public comment during that Board meeting that he, Weiss, was "being childish."

97.  On or about June 1, 2017 as plaintiff Weiss was leaving the AGCAI annual unit owners meeting, defendant Miller told him that his comment at the annual meeting was better than the "shit" he had been sending to the board.

98.  Weiss found Miller's comment to be extremely offensive language and constituting a personal attack. Weiss so informed Miller of this in a letter to him dated the same day, June 1, 2017 and requested a meeting with the board. Copy attached as Exhibit P0017.

99.  When Weiss attended the July 10, 2017 board meeting, defendant Dettlebach again assaulted him, making it necessary to defendant Kleinfelter to pull him away for Weiss.

100.  On July 11, 2017 defendant Miller approached Weiss in the parking lot outside of Building 2 and stuck his head in his car window and called Weiss a "f—ing liar."  Weiss again wrote to Miller about his inappropriate behavior and asking him to stop his personal attacks and to make Dettlebach stop attacking him too.

101.  Defendant Miller on many occasions also verbally abused plaintiff Phillips when she

-27-

attended AGC "town hall" meetings or saw him on the AGC property and asked him questions about his decisions as a Board member and his actions or failures to act.

102.    Board member abuse of plaintiff Phillips also occurred at the September, 2018 board meeting when she asked the board a question about how money was being spent and defendant Kleinfelter responded, in so many words and in a very disrespectful manner told her to mind her own business.

103.    Defendant Miller and the AGCAI board also used its employees, defendants Flynn and Jevnikar, to enforce Miller's and the board's will on Plaintiffs Weiss and Phillips and other unit owner-Association members and to punish those they did not like by allowing Flynn and Jevnikar to verbally abuse these members and to make their lives more difficult by refusing their reasonable requests.

104.    The board also directed that all communications to the board by unit owners and residents had to go through defendant Flynn, which she often answered on her own without first notifying the board.

105.    Beginning on June 2, 2016 Plaintiff Weiss asked defendant, Lisa Flynn as the AGC Property Manager and the Board, to produce a copy of the minutes of the Association's Unit Owners' Annual Meeting, which eventually Flynn produced. For copy, see Exhibit P0023 attached.

106.    On July 5, 2016 Weiss asked Flynn and the Board members to see "the past three years of contacts (sic) – referring the contracts – "for American International and Impullitti Landscapping including competitive bids." For copy of this request, see Exhibit P0024.

107.    On July 16, 2016 Weiss asked Flynn and the Board Members to change his request to see only three years of signed contracts regarding Impullitti Landscaping and American

-28-

International to "the past five years."  For copy, see Exhibit P0025 attached.

108.  Flynn eventually provided only the 2017 contract with Impullitti signed in 2016.

109.  On August 3, 2016 Weiss asked Flynn and Board members to provide him with "a copy of the Association's Rule Book at the time of it's inception" and the "minutes regarding the use of gas grills and the no cooking prohibition at that time."  Copy of this letter attached as Exhibit P0026.

110.  Weiss's August 3, 2016 request was ignored.

111.  On March 7, 2017 Weiss again asked to see "all contracts for work done at Acacia by the board for the years 2017, 2016 and 2015. For copy, see Exhibit P0027 attached.

112.  Weiss's March 7, 2017 request was ignored, except for the 2017 contract with Impullitti Landscaping, Inc.

113.  On March 30, 2017 Weiss asked Flynn and the Board members a second time to see the "executed contracts for landscape work and concrete work on the balconies for the years 2016, 2015 and 2014, for which he had agreed to pay a 25 dollar charge.  Copy attached as Exhibit P0028.

114.  Weiss's March 30, 2017 was ignored except for the Impullitti 2017 contract which was made available to Weiss on April 6, 2017.  See copy of Flynn April 3, 2017 letter attached as Exhibit P0029.

115.  On April 12, 2017 Weiss wrote to Flynn and Board members noting that Flynn had showed him only unsigned contracts when they had met, and again asking to see the signed contracts. For copy, see Exhibit P0030.

116.  On May 15, 2017 Weiss wrote to Flynn and the Board members advising that he had still not

-29-

received 1) the list of current unit owners (which he eventually received), 2) minutes of the board meetings when the issues of smoke and orders about grills were discussed, 3) minutes of the board meeting when defendant, John Klein, referred to the letter written by defendant Bill Doyle at their meeting on February 16, 2017, and 4) the signed contracts with American International, Impullitti and the vending company.  For copy of Weiss letter, see Exhibit P0031 attached.

117.  On May 15, 2017 Weiss wrote to the Board Members and Flynn to tell them that they had not yet responded to his requests for 1) list of current unit owners in buildings 1 and 2, 2) minutes of board meetings when the issues of smoke and orders (sic...should read "odors") from grills were discussed, 3) minutes of board meeting which defendant Klein referred to regarding letter written by defendant Doyle at their meeting on February 16, 2017, and 4) signed contracts from American International, Impullitti and the vending company for the years 2014, 2015 and 2016.  Copy attached as Exhibit P0031.

118.  On June 13, 2017 Weiss asked Flynn and the Board to see the Association's insurance coverage, relevant pages from the Declaration regarding liability for damages and subrogation, the approval of the Lyndhurst fire inspector for use of the gas grills on the pavilion area, the signed contract with the company that built the pavilion and the company that put in the gas grills, and the risk assessment study or legal opinion used in making the decision to reduce the life guard to weekends only.  For copy of this request, see Exhibit P0032 attached.

119.  Weiss's June 13, 2017 request was ignored.

120.  On June 30, 2017 Weiss asked defendants Flynn, Board members and Marvin Miller, to see

-30-

the contracts with American International, Impilultti (sic) – should read "Impullitti" – Landscaping and the vending machine company for "2015, 2016 and 2017." For copy, see Exhibit P0033.

121. Weiss's June 30, 2017 request was ignored, except for the Impullitti 2017 contract for landscaping which was eventually produced.

122. On July 13, 2017, based upon defendant Jevnikar's statement that Impullitti Landscaping, Inc. had built AGC's new pavilion, Weiss asked to see the contract for that job. For copy, see Exhibit P0034, attached.

123. Weiss's July 13, 2017 request was ignored.

124. On August 29, 2017 Weiss repeated his request to Flynn asking for the July 2017 board minutes. For copy, see Exhibit P0035 attached.

125. Weiss's August 29, 2017 request was ignored.

126. On September 20, 2017 Weiss again asked to arrange a time when he could see the signed contracts for 2014, 2015, 2016 and 2017 with Impullitti, American International, and the vending machine company, along with signed contracts and failed bids for:

A. Rebuilding the swimming pool,

B. Construction of the new pavilion,

C. Repairs to the tennis court,

D. Construction of the exercise room (aka "fitness center") and purchase of the equipment,

E. Repairs to the garage.

He ended his request by asking to be told if the requested contracts and failed bids do not exist, to be so told. For copy of Weiss's request, see Exhibit P0036 attached.

-31-

127. The only response to this request was to receive the 2017 Impullitti contract.

128. On October 23, 2017 Weiss met with Flynn at her outer office in AGC building #1 when she told him that there were three bids for replacement of the swimming pool, one bid for the equipment in the new exercise room, one bid for construction of the exercise room and five bids for the garage repairs. She also told Weiss that in 2011 they only got one competitive bid for the work done by American International.

129. Neither Flynn nor the Board ever produced any of the bids Flynn mentioned had been obtained as she related to Weiss in paragraph 128 above.

130. On November 2, 2017 Weiss asked to have copies of "all bank statements from January 2016 thru October 2017." For copy, see Exhibit P0037, attached.

131. Weiss's November 2, 2017 request was ignored.

132. On November 17, 2017 Weiss again asked Flynn for the aforesaid bank statements, as well as copies of "any insurance the association provides to any employee or agent of the association except for medical." He attached an article from Kaman & Cusimano law firm acknowledging his entitlement to such records. For copy of his letter, see Exhibit P0038, attached.

133. Weiss's November 17, 2017 request was ignored.

134. On January 4, 2018 Weiss asked Flynn and Board members for year end summary bank statements for 2016 and 2017, as well as the signed contracts and, finally, "to see the association books." For copy, see Exhibit P0039, attached.

135. Weiss's January 4, 2018 request was ignored.

136. On January 22, 2018 Weiss repeated his requests to Flynn for "All signed contracts with

-32-

Impullitti and American International, copies of the bank statements requested with a breakdown of the following expenses showing how much and to whom or what company they were paid, a) administrative expenses [and] b) maintenance and repair expenses." For copy, see Exhibit P0040 attached.

137.    On February 6, 2018 Flynn finally responded to Weiss's January 22, 2018 letter, advising that she would show him the "2017 contracts with Impullitti and the contract for American International" with a request that he call her to arrange a time.  She then stated that the "rest of the information you asked for, those items were being withheld due to the announcde plans to file a lawsuit against the Association."  For copy of this letter, see Exhibit P0041 attached.

138.    The result of the foregoing allegations of failures to act and/or the wrongful conduct by the defendants is that plaintiffs and others like them have been denied the full use and enjoyment of their respective units contrary to both the cited federal and Ohio law.

## <u>COUNT I</u>
### (Violations of Ohio Condominium Law - RC Chapter 5311)

139.    For their first claim against the defendants, Acacia on the Green Condominium Association, Inc. and each of the above-named defendant current or former unit-owner board members: Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Miller, Rothman and Wachs, Plaintiffs incorporate as if fully rewritten each of the allegations contained in paragraphs 1-105 above.

140.    Plaintiffs aver that defendant Acacia on the Green Condominium Association, Inc. and the aforesaid former and current individual defendant unit owner/board member directors willfully, recklessly and in bad faith violated the provisions of Ohio Revised Code, §§

-33-

5311.08, .081 and 5311.19 (which require condominium association boards of directors to administer condominium property in accordance with the covenants, conditions, and restrictions set forth in unit owners' deeds, as well as the Declaration of Condominium Ownership, Bylaws and rules and regulations of the governing association).

141. The aforesaid former and current individual unit-owner/board member defendants are subject to this civil action for damages, injunctive relief, and an award of court costs and reasonable attorney's fees by the express provisions of RC §§ 5311.19(A) and 5311.23(A) and (B), and by virtue of each condominium unit owner in Ohio being required to act with good faith toward every other unit owner in the same condominium property, as well as ARTICLE XVII, Section 17.03, of the AGC Declaration.

142. Defendants AGCAI and the individual unit-owners/board members' violations included :

   (i)     Denying Plaintiffs and other AGC unit owners and residents the full use
           and enjoyment of their residences;

   (ii)    Refusal to amend AGCAI's Rules and Regulations so as to permit unit
           owners having concrete patios adjacent to their units to use gas or
           charcoal grills in keeping with the amended Fire Codes of Ohio and
           the City of Lyndhurst, Ohio;

   (iii)   Repeatedly denying, by the actions of Defendant Miller as AGCAI's
           immediate past president as well as those of defendant board Member Dettlebach,
           the requests of Plaintiffs Stephen Weiss and Gene B. Phillips to use a gas grill on
           their patios without giving legitimate reasons for such denials;

   (iv)    Failing to condemn or censure the attacks made by Defendants Miller,
           Dettlebach and unit owner William Doyle on Plaintiff Weiss;

   (v)     Failing to keep apprised and then discharge or otherwise correct the
           dictatorial and callous manner in which Defendants Jevnikar and Flynn
           exercise authority over Plaintiffs and other AGC unit owners and/or residents;

   (vi)    Failing to properly manage Acacia on the Green Condominium Association, Inc.
           in keeping with the requirements of both RC, Chapter 5311, and the AGC

-34-

Declaration of Condominium Ownership vis-a-vis its financial records,
and failing to revise the Association's Rules and Regulations to permit the
use of gas grills by unit owners having concrete patios adjacent
to their units, a permitted by Ohio and Lyndhurst laws;

(vii)   Failing to properly manage Acacia on the Green Condominium Association, Inc.
in keeping with standard business practices governing non-profit
Ohio corporations responsible for managing large, multi-unit apartment
buildings having multi-million dollar budgets, including each of the
failures set forth in paragraph 65 above;

(viii)  Improperly allowing Defendants Kenneth Kevnikar, as AGC Maintenance
Supervisor, and Defendant Lisa Flynn, as AGC Property Manager, to exercise
excessive authority and discretion in contracting with third party vendors and
contractors without specific prior approval by the AGCAI board of directors;

(ix)    Improperly allowing Defendants Kevnikar and Flynn to make decisions
regarding questions, concerns and lawful requests to see Association records brought
to them by unit owners without their (Jevnicar and Flynn) first seeking input from
the board of directors;

(x)     By carrying out the rehabilitation of the AGC garage and replacing the swimming
pool, which the Board determined was obsolete in whole or in part, without first
obtaining the approval of not less than seventy-five percent (75%) of the voting
power of the Unit Owners at a special meeting called for such purpose or by proxy,
as required by ARTICLE XIII of the AGC Declaration;

(xi)    By deciding to build a new picnic pavilion and to eliminate the Social Room in
Building 1 in order to build a new Fitness center and Card room, all without first
obtaining the approval of not less than ninety percent (90%) of the voting power of
the Unit Owners at a special meeting called for such purpose or by proxy, as required
by ARTICLE VIII, Section 8, of the AGC By-Laws;

(xii)   By failing to obtain the "prior approval of members of the Association entitled to
exercise a majority of the voting power of all members of the Association
present in person or by proxy at an annual or special meeting duly held for such
purpose" before making multiple expenditures for the additions, alterations and
improvements to the Common Areas and Facilities of AGC each exceeding a total
cost of Ten Thousand Dollars and making annual expenditures for said purposes
aggregating in excess of Twenty-five Thousand Dollars, as required by ARTICLE
VIII, Section 2, of the AGC By-Laws;

(xiii)  By failing as the Board to prepare on or before the first day of December of each year
"a budget which shall be based upon … 'the estimated cash requirement'" needed for

-35-

the ensuing calendar year to pay the Common Expenses and to provide for a reserve for contingencies and replacements, as required by ARTICLE X, Section 3 of said By-Laws;

(xiv)  By failing as the Board to submit in writing on or before December 15 of each year such budget to each Unit Owner, including the "estimated cash requirement" and the "Assessment against each Unit Owner," as required by ARTICLE X, Section 3 of said By-Laws; and

(xv)  By failing as the Board to "establish and maintain for the Association a reasonable reserve for contingencies and replacements," as required by ARTICLE X, Section 4, of said By-Laws; and

(xvi)  By failing as the Board to require its vendors and contractors always to obtain required building or other permits and proper drawings to insure compliance with all applicable laws, including accessibility of handicapped or disabled persons to the aforesaid swimming pool, pavilion, and the fitness center and card room; and

(xvii)  By failing as a Board to require its employee, defendant Lisa Flynn, to time provide plaintiff Weiss with access to or copies of the various records and/or documents he requested from June, 2016 through January 22, 201.

143.  Defendant ACGAI's aforesaid willful, bad faith and reckless conduct directly and proximately caused plaintiffs Gene B. Phillips and  Stephen G. Weiss great inconvenience, frustration, embarrassment, anger, waste of time, worry, fear, and the inability to fully use and enjoy their condominium apartments, in addition to making their condominium units become at great financial risk of increased maintenance and reserve costs, as well as lessened in value.

## COUNT II
### (Breach of Corporate Fiduciary Duties - R.C. Chap. 1702)

144.  For their second  claim against the defendant, Acacia on the Green Condominium Association, Inc., and each of the above-named defendant current or former unit-owner board members: Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Miller, Rothman and Wachs,  Plaintiffs incorporate as if fully rewritten each of the

-36-

allegations contained in paragraphs 1-143 above.

145. Plaintiffs further state that the aforesaid defendant unit owner-board members, as referred to in paragraphs 31-40 above, by their aforesaid wrongful actions and omissions, willfully, recklessly and in bad faith breached their fiduciary duties as directors of the Acacia on the Green Condominium Association, an Ohio corporation not for profit, and acting as its Board of Directors, toward Plaintiffs and other unit-owner members of said corporation.

146. Said defendants failed to carry out the following duties toward Plaintiffs as members of AGCAI:

    (i)  To act in good faith in the Unit Owners' and the Association's best interests at all times;

    (ii)  To exercise care to act as an ordinarily prudent persons in like elected positions would act; and

    (iii)  To uphold both the Ohio Condominium law and not-for profit corporation law, the AGC Declaration, and the aforesaid federal and Ohio civil rights laws prohibiting discrimination against handicapped or disabled unit owner residents.

147. Said Defendants breached their aforesaid duty under Ohio corporation law by causing or approving, contrary to RC §§1702.15 and 1702.54(1) and (2), false or erroneous minutes to be recorded of the June, 2016 annual meeting of the Association , which minutes stated:

148. Said Defendants' actions and omissions alleged in paragraphs 1-143 were opposed to the best interests of the corporation, contrary to RC § 1702.30.

149. Said Defendants' actions and omissions alleged in paragraphs 1-110 damaged Plaintiffs individually as members of the corporation by (1) interfering with their quiet and peaceful enjoyment of their respective condominium units, and (2) causing them to experience great emotional distress, and (3) exposing them to potential claims by other unit owners for the

Electronically Filed 05/02/2019 16:07 / / CV 19 914812 / Confirmation Nbr. 1698472 / CLSK1

same or similar violations alleged herein vis-a-vis causing the Association's potential

liability and thereby increasing their financial risk of liability for said defendants' wrongful

conduct, including eventual increased maintenance and reserve fund fees to cover necessary

corrections to improvements already undertaken by the Board in violation of federal and/or

local law, as well as for the other damages to Plaintiffs.

150. Said Defendants breached their duty to timely adopt reasonably adequate budgets for

maintenance fees and capital reserve funds each year, as evidenced by their sudden action in

seeking authority to borrow up to and including $500,000, which was done to avoid having

to increase their own and the other unit owners' reserve portions of their maintenance fees .

151. Plaintiffs also allege that the said Defendants failed to annually submit the Board's proposed

annual budgets to them and the other AGC unit owners and Association members for their

review, as required by the Declaration.

152. Plaintiffs allege that the only annual AGCAI budget that was given to Plaintiff Weiss is that

attached as Exhibit P0020, which is entitled "Operating Budget" with no reserve accounts

shown.

153. Plaintiffs allege that Exhibit P0020 was assembled for only plaintiff Weiss and was neither

timely prepared, nor adopted and timely submitted to unit owners as required by the Bylaws.

154. Exhibit P0020 was only provided to plaintiff Weiss after demanded same.

155. Exhibit P0020 is not a properly prepared, business-like budget, as seen, in part  by its

omission of:  (A) the names of any annual and monthly reserve fund accounts, much less by

category, (b) the amount of money budgeted monthly by category for each of said sub-

account of the operating fund for the current and the immediate past and succeeding years,

and (c) the amount, if any, of the estimated excess of operating revenue over other expenses for the current year, as well as the immediate past and succeeding years.

156. AGCAI in 2011 hired Reserve Advisors, Inc. to prepare a comprehensive study of AGC's long-term capital needs.

157. The Association's Board attached a copy of one part of a page from the Reserve Advisor's report below a bulleted list of statements made by the Board for the edification of persons who happen to have read the sheet that was published in an AGC newsletter. A copy is attached as Exhibit P0021.

158. Exhibit P0021 includes a chart beginning in 2019 that shows Reserve Advisors recommended the Board *annually* fund its reserve account with increasing amounts beginning in 2019 with $924,312 through 2026 with $994,993, which the Board has chosen not to do.

159. Plaintiffs have not seen any other part of the aforesaid Reserve Advisors report, but have reason to believe and therefore aver that it included many necessary capital repairs and/or replacements along with their estimated costs, many of which the Board has not yet decided to undertake for lack of sufficient reserve funds.

160. Exhibit P0021 also states the Board was then collecting only about $407,000 a year in Reserves, an amount that was less than one-half of what it needs to adequately fund AGC's Reserves.

161. Exhibit P0020 is further seen as being improper by the fact that it nowhere discloses whether it is a draft or a finally Board-adopted budget and, if adopted, the date it was approved.

162. Timely submit same to Plaintiffs and the other AGC Association members reflects said

Defendants' willful, reckless and bad faith dereliction in carrying out one the Board's most important duties.

163.  The aforesaid Defendants' refusal for many years to adopt adequate budgets requiring reasonable monthly assessments for maintenance fees and capital reserves in separately funded accounts sufficient to perform routine maintenance and capital replacements and/or desired improvements resulted in the Board recently deciding in 2016 to nearly exhaust the reserve fund and borrowing $500,000 to pay for major repairs and replacements and/or improvements, including: (a) repairs to the AGC garage, (b) replacement and construction of new swimming pool that was not built according relevant FHAA and ADA requirements that it be accessible by handicapped or disabled persons, (c) construction of a new pavilion with large gas grills that also was not built according to relevant FHAA and ADA requirements that it be accessible by handicapped or disable persons or built in accordance with the Lyndhurst fire code, (d) replacing the existing social room in building 1 with a new fitness center and card room, which also should have been designed and built – and were not – according to relevant FHAA and ADA requirements to make these rooms be accessible by handicapped or disabled persons.

## COUNT III
### (Breaches of Contract)

164.  For their third claim against defendant, Acacia on the Green Condominium Association, Inc., Plaintiffs Weiss and Phillips incorporate herein as if fully rewritten each of the allegations contained in paragraphs 1-163 above.

165.  The AGC Declaration is a contract between AGCAI and its unit owners and members.

166.  AGCAI, through the Board, has an obligation to build up and maintain a reasonable separate

Electronically Filed 05/02/2019 16:07 / / CV 19 914812 / Confirmation Nbr. 1698472 / CLSK1

reserve fund for contingencies and replacements so that extraordinary, necessary

expenditures not originally included in the annual operating budget are charged first against

the reserve fund to avoid the need for a special assessment.

167.    The aforesaid Defendant board members/unit owners also breached the following provision

governing reserves contained in AGCAI's By-Laws:

## ARTICLE X

## ASSESSMENTS

Section 3.       Budget and Assessment. The Board shall on or before the first day of
December of each years subsequent to the first annual meeting of members of the
Association prepare a budget which shall be based on its estimate of the total amount ("the
estimated cash requirement") that will be required during the ensuing calendar year to pay
the Common Expenses and to provide a reserve for contingencies and replacements. On or
before December 15 of each year, the Board shall submit such budget in writing to each Unit
Owner including therein the said "estimated cash requirement together with a reasonable
itemization thereof. * * *

168.    Plaintiffs aver among Defendant Marvin N. Miller's most important duties as President of

CAI and its Board of Managers/Directors from 2012 until he resigned in April, 2018 was to

see that the Board properly prepared and timely submitted to each AGC unit owner and

member annual budgets, as set forth in ARTICLE X of the By-Laws.

169.    Plaintiffs allege that Defendant Miller willfully, recklessly and in bad faith knowingly failed

to carry out his aforesaid duties in a manner constituting self-dealing.

170.    Plaintiffs also aver that the person or persons who served as Treasurer to AGCAI and its

Board were also responsible for annually and timely preparing, adopting and then timely

submitting properly prepared budgets to AGC unit owners to review in order to fully

understand the amounts they were being assessed each month for maintenance and reserve

fee costs.

-41-

171.  By so failing to prepare and submit said budgets, the Treasurers and the Board unlawfully deprived plaintiffs and all other unit owners from fully understanding their monthly fee assessments.

172.  Plaintiffs aver that James N. Kleinfelter since 2015 has served as the Treasurer of AGCAI and its Board.

173.  Defendant Kleinfelter currently is the President and Chief Executive Officer of both the Geauga Savings Bank and the Maple Leaf Financial Corporation and therefore has considerable knowledge and experience with corporation budgets.

174.  Defendant Miller is now and for many years has had extensive business experience, whether in operating his own or business/es of others. He, too, has considerable knowledge and experience with corporation budgets.

175.  Defendant Klein holds Bachelor's, Master's and PhD degrees and during the period 1970-2006 periodically held administrative duties as a Professor, Sociology at John Carroll University.  He also has experience and knowledge in dealing with organization budgets.

176.  Defendant Wachs is a retired attorney at law, having attended the University of Michigan and received a Juris Doctor degree.  She has served as a partner in a prominent Cleveland law firm, as well has having served as Chairperson of the Arizona State Board of Tax Appeals and taught at Arizona State University.  She currently serves on several other boards in addition to the AGCAI Board.  By definition she understands budgets.

177.  Defendant Dettelbach also has extensive business experience, including 50 years in marketing, sales and service, as well as engaging in negotiations and purchasing of a multitude of products, many of which are used in the day to day functions of AGC.

-42-

He, too, understands and knows the budgeting process.

178.  Defendant Rothman has lived at AGC since 2007 and has served on its Board since 2015. She has served as Publicity/Public Relations professional at the Jewish Community Center and as a part-time staff reporter, later City Editor, of the Cleveland Jewish News. She also was employed by AGCAI during 1980-1982 – its transition from a premier apartment facility to condominium status.  She is believed to be experienced in business affairs and budget knowledgeable.

179.  Defendant Lombardy holds an Associate Degree in Business from Ursuline College and spent 42 years with Progressive Insurance Corporation, including 32 years in its Accounting Services Division.  She served as Treasurer of the Board of Directors from 2015 to 2017. She also is experienced with corporate budgets.

180.  Defendant Licker's background is presently unknown to Plaintiffs, but they know and therefore allege that she currently owns, and for several years has owned, more than one unit in AGC. By virtue of her prior business or real estate experience she is believed to be knowledgeable about the duties and responsibilities of serving on the board of a non-profit corporation such as AGCAI.

181.  Defendant Scott Cohen was elected to the AGCAI Board in June, 2018.  Plaintiffs allege that if, before or soon after becoming a member of the Board, he read the Declaration, By-Laws and familiarized himself with the minutes of recent Board and Unit Owner meetings, as Plaintiffs presume he did, then in such event he knows or reasonably should know that the Board failed to carry out many of its responsibilities as alleged above.

182.  Each Board member named in this Count, including Scott Cohen who became a member of

-43-

the AGCAI Board in June, 2018, at all times material knew or reasonably should known

what Ohio law and the AGC Declaration, By-Laws, Rules and Regulations required of them

as a board member in budgeting, including reasonable reserves, obtaining requisite

approvals from Unit Owners before undertaking various construction and rehabilitation

projects, spending condominium income of contracts in excess of $10,000 per contract and

$25,000 per year for same, and otherwise, as members of a condominium board under Ohio

condominium and not-for-profit laws, as alleged above.

183.    The foregoing failures of Board member defendants, Miller, Dettlebach, Doyle, Klein,

Kleinfelter, Koplow, Licker, Lombardy, Rothman and Wachs to carry out their respective

duties regarding the preparation, adoption and submission of annual budgets for AGCAI, as

well a their duties regarding the proper spending of condominium maintenance fee and

reserve fee income, constitute willful, reckless and bad faith conduct toward both the

Association and plaintiffs as Unit Owners and Association members.

184.    The longstanding insufficiency of the AGCAI reserve fund was finally recognized by the

Board on December 15, 2015 when ARTICLE III, Section 14d) of the Declaration was

amended to permit the Board to borrow "up to a principal amount of $500,000 for the sole

purpose of funding certain major repair and replacement projects" on the AGC property.

185.    Plaintiffs aver that Defendant Miller's bad faith failure to carry out his duties as President of

the AGCAI Board is evidence of his having served his own interest in not having to pay

increased maintenance fees and reserve fund fees, or even special assessments, during his

entire tenure as President, as opposed to having acted in the best interest of the Association

and its Unit Owners and Members.

-44-

186. Plaintiffs aver that the other Defendant Board members/unit owners, bad faith failures to carry out their duties as described above also is evidence of their having acted in their own interests, as opposed to acting in the best interest of the Association and its Unit Owners and Members.

187. Plaintiffs Phillips and Weiss have performed all of the duties on their parts to be performed.

188. Defendant Acacia on the Green Condominium Association, Inc., on the contrary, breached its aforesaid contractual obligations to them as heretofore alleged.

189. Plaintiffs Phillips and Weiss have each incurred financial damages in the nature of having to share with other Unit Owners the likelihood of greatly increased maintenance and reserve fee assessments due to said Defendants failure to properly manage the finances of AGC so as not to necessitate borrowing a large sum of money to pay for the costs of constructing the AGC swimming pool, its adjoining pavilion, fitness center and card room, and repairing the garage, as well as having to re-construct some or all of said facilities in order to make them comply with handicap and fire code requirements.

190. Plaintiffs do not have sufficient information with which to state the extent of their aforesaid financial damages, but, on information and belief, allege that they will amount to in excess of $25,000 each.

191. Had adequate maintenance and reserve fees been budgeted for the past several years and competitive construction bids obtained, there would have been little or no need to borrow a large sum of money to replace the swimming pool, build the new pavilion and to replace the social room with a fitness center and card room, as well as repairing the garage.

192. In addition, had adequate maintenance and reserve fees been budgeted as alleged above,

-45-

Plaintiffs Phillips and Weiss and the other unit owners and Association members would not now be at risk for AGCAI having to share the increased cost of bank interest on funds that it borrowed.

193. Plaintiffs Phillips and Weiss have reason to believe and therefore aver that the failure of the defendants to reasonably fund AGCAI reserves and their failure to obtain the requisite approvals of the Unit Owners before proceeding to spend thousands of dollars on a new pavilion, a new swimming pool, and a new fitness center, as well as unlawfully using much of the reserve funds to build these new items of AGC property, has now saddled the Association and therefore each Unit Owner with unnecessary financial risk, thereby reducing the current market value of each unit by discouraging potential purchasers from buying AGC units, including Plaintiffs' units.

194. Plaintiffs Phillips and Weiss are each entitled to money judgments against Defendant AGCAI for their aforesaid losses in fair market value, which they allege will amount to approximately $25,000 each.

## COUNT IV
### (Violation of the FHAA and ADA)

195. For their fourth claim against the defendant, Acacia on the Green Condominium Association, Inc., and each of the above-named defendant current or former unit-owner board members: Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Miller, Rothman and Wachs,  Plaintiffs incorporate herein as if fully rewritten each of the allegations contained in paragraphs 1-194 above.

196. Plaintiffs further aver that each of the Defendants by their aforesaid wrongful actions and failures to act caused Defendant AGCAI to violate the federal Fair Housing Amendments

-46-

Act of 1988 (42 U.S.C. §§ 3601, et seq.) and the Americans with Disabilities Act (42 U.S.C. §§ 12001, et seq.) which prohibit discrimination against owners and residents of covered condominium dwellings, such as the AGC at issue in this case.

197.  Each Plaintiff was at all relevant times and is now a handicapped person as defined by those Acts.

198.  Defendants knew, at all relevant times, that Plaintiffs were handicapped or disabled persons.

199.  Plaintiffs Weiss and Phillips each requested, at all relevant times regarding Defendants ACGAI, Marvin Miller and Richard Dettelbach as Board presidents, to accommodate them by allowing them (i.e., Phillips and Weiss) to use a gas grill on their patios so as not to be required to walk several hundred feet to use the new Common Area grills located on the new AGC pavilion (the use of which grills was prohibited by the City of Lyndhurst for having been installed contrary to the local fire code and without a permit having been first obtained).

200.  Plaintiffs Phillips and Weiss each requested Defendants AGCAI, Flynn, Miller, Klein and Kleinfelter to be allowed to have and use a gas grill on their respective concrete patios and were denied such requests by them.

201.  Said Defendants refused to accommodate Plaintiffs as alleged above.

202.  The accommodations requested by each Plaintiff was reasonable and required little, if any, burden on said Defendants in the operation and management of the AGC property.

203.  Said defendants' refusals constitute unlawful violations of the FHAA and ADA have caused Plaintiffs to incur disruption to their full enjoyment and use of their respective dwellings, as well as having caused each of them great emotional distress, as already alleged.

-47-

204.  Plaintiffs seek and are entitled to recover damages for the aforesaid Defendants to compensate them for their damages which they allege will amount to in excess of $25,000 each.

## COUNT V
### (Unlawful Discrimination - RC § 4112.02)

205.  For their fifth claim against the Defendants, Acacia on the Green Condominium Association, Inc., and each of the above-named defendant current or former unit-owner board members: Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Miller, Rothman and Wachs, Plaintiffs incorporate herein as if fully rewritten each of the allegations contained in paragraphs 1-204 above.

206.  Plaintiffs further aver that defendants' aforesaid actions and failures to act were knowingly and/or recklessly done in violation of RC § 4112(H)(19) which makes it unlawful for any person to refuse to make reasonable accommodations in rule, policies, practices and services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling unit, including associated public and common use areas.

207.  Defendants each are persons subject to RC § 4112.02(H) since each of them was and/or is charged with making or amending and/or executing the rules, policies and practices governing Plaintiffs' use and enjoyment of their respective units at AGC.

208.  Defendants' adoption and/or enforcement and/refusal to revoke AGCAI's rule prohibiting the use of gas grills on Plaintiffs Weiss' and Phillips' patios was done contrary to the aforesaid Ohio law.

209.  Defendants' aforesaid knowing and reckless actions and failures to act also violated RC § 4112.02(J) which makes it an unlawful discriminatory practice for any person to

-48-

discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in section 4112.02(H).

210. Plaintiffs' Weiss and Phillips' efforts to seek and obtain accommodations to use grills on their patios and defendants Cohen, Doyle, Dettlebach, Flynn, Jevnikar, Kleinfelter, Klein, Licker, Lombardy, Miller, Rothman, Wachs and AGCAI's aforesaid actions and inactions operated as discriminatory conduct against said Plaintiffs because of their said efforts.

211. Both Plaintiffs' use and enjoyment of their respective condominium units has been and continues to be severely limited by said defendant's actions and inaction for which Plaintiffs each seek a judgment against each defendant individually and against the Acacia on the Green Condominium Association in such amount as will fully and adequately compensate them, which they now estimate will exceed $25,000 each.

### COUNT VI
### (Declaratory Judgment)

212. For their sixth claim against Defendant, Acacia on the Green Condominium Association, Plaintiffs Phillips and Weiss incorporate herein as if fully rewritten each of the allegations contained in paragraphs 1-211 above.

213. Said Plaintiffs further aver that when their respective units were purchased by or for them the AGC Declaration of Condominium Ownership contained the following explicit grant of an easement allowing their use and requiring their maintenance of gas grills both within and outside of their units on their concrete patios, namely:

> **Article VII Section 7.01**
> **Purpose of Condominium Property and  Covenants and Restrictions**
> **as to Use and Occupancy.**
>
> *The purposes of the Condominium Property and of the Units and*

-49-

*facilities situated therein is housing and those uses which are both customarily accessory and, incidental to residential dwelling.* Each Unit shall be used for residential purposes and for no other purpose. Emphasis added.

**Article IX Section 9.02**
**Responsibilities of Unit Owners.**

*The responsibilities of each Unit Owner shall be:*
(a) Maintenance and repair.

      *      *      *

*(ii) To maintain, repair and replace, at the Unit Owner's expense, the electrical or gas appliances, fireplaces and gas grills located within the Unit or the Limited Common Areas designated for use by the Unit or the Owner;* and to otherwise maintain the Unit in good, clean, neat, safe and sanitary condition, and in conformity with all laws, ordinances, rules and regulations applicable to the Unit and the Limited Common Areas designated for use by the Unit Owner. Emphasis added.

**Article XI Section 11.02**
**Patio and Balcony Easement.**

The *unit owner having a patio* or balcony *adjacent to his unit shall have for himself, his heirs and assigns, an exclusive easement for his use and enjoyment of such patio* or balcony; provided, however, that the unit owner shall have the right to decorate, landscape or adorn such patio or balcony in any manner without the written consent of the Association, provided that such decorating, landscaping or adornment shall not be contrary to the Rules of the Association. Emphasis added.

**Article XX Section 21.08**
**Covenants Running With the Land.**

By the acceptance of a deed of conveyance, each grantee of the Declarant accepts the same subject to . . . (iii) all rights, benefits, and privileges of every character granted herein, created, reserved, or declared, *and all impositions and obligations imposed hereby shall be deemed covenants running with the land, shall bind any person having at any time any interest or estate in said land, and shall inure to the benefit of such person in like manner as though this Declaration were recited ands stipulated at length in each and every deed of conveyance.* Emphasis added.

214. Defendant AGCAI, and defendants Jevnikar and Flynn, and the former and current AGC

directors' and board members' foregoing actions and failures to act vis-a-vis denial of

Plaintiffs Weiss and Phillips requests to use gas grills on their patios has operated to viola21

Plaintiffs are also entitled to a declaration by this Court finding that Plaintiffs' respective

units and, indeed, all first floor unit owners whose units have concrete patios adjoining them

and otherwise meet the Ohio and Lyndhurst fire codes, each have as an easement the right to

use gas grills on their respective patios and to allow their service dog to use the unit owner's

balcony in keeping with all applicable laws and all reasonable rules that may be imposed by

the Association.

215. Pursuant to R.C.§ 5311.081(A)(1):

(A) Unless otherwise provided in the declaration or bylaws, the unit
owners association, through the board of directors, shall do both of the following:

(1) Adopt and amend budgets for revenues, expenditures, and reserves
in an amount adequate to repair and replace major capital items in
the normal course of operations without the necessity of special assessments,
provided that the amount set aside annually for reserves shall not be less
than ten per cent of the budget for that year unless the reserve requirement
is waived annually by the unit owners exercising not less than a majority of
the voting power of the unit owners association.

216. R.C. § 5311.08(A)(1) became effective on July 20, 2004.

217. As previously alleged, AGCAI's By-Laws also require the Board before December 1 each

year to prepare and adopt a proper budget containing both estimated annual maintenance fee

and reserve income and expenses and to submit same to the Unit Owners no later than

December 15, which AGCAI and the Defendant Board member/unit owners have repeatedly

failed to do.

218. AGCAI's Board has not adopted a budget for reserves in an amount adequate to repair or

replace major capital items in the normal course of operations without the necessity of the Association borrowing large sums of money and thereby incurring large debt and the necessity of paying significant interest expenses for many years which has necessitated an increase in Plaintiffs' payment of increased maintenance and reserve fees.

219. Insufficient funds were budgeted each year for reserves to pay for the cost of replacing the swimming pool.

220. Insufficient funds were budgeted each year for reserves to pay for the cost of building a new pavilion with gas grills.

221. Insufficient funds were budgeted each year for reserves to pay the cost of replacing the social room with a new fitness center and card room.

222. Insufficient funds were budgeted each year to make the necessary repairs to the garage.

223. The Board breached its duty by deciding to borrow $500,000 to pay, in part, for replacing the obsolete swimming pool and building a new pavilion adjoining the pool and thereby incurring significant interest debt in stead of adequately funding reserves each year.

224. The Board breached its duty by deciding to borrow money to pay, in part, for building a new fitness center and card room and removing the obsolete social room and thereby incurring significant interest debt in stead of adequately funding reserves each year.

225. Before constructing the aforesaid new facilities (i.e., the swimming pool, pavilion, fitness center/card room) and repairing the garage, the AGC the Board was required by ARTICLE XIII of the AGC Declaration to first obtain by affirmative vote of Unit Owners entitled to exercise not less than seventy-five percent (75%) of the voting power, at a meeting called for such purpose, that the swimming pool, social room and garage were "obsolete in whole or in

-52-

-52-

part" and needed to be "renewed and rehabilitated."

226. In addition, RC § 5311.14(B)(1) also required the Board of the Association to obtain prior approval from not less than seventy-five percent (75%) of the unit owners' voting power before destroying those parts of the AGC property deemed obsolete, consisting of the swimming pool and social room common elements and then building a new pool and fitness center/card room as common elements of AGC.

227. Plaintiffs aver that the Board failed to seek the prior approval as required by RC§ 5311.14(B)(1) before embarking on replacement of the pool and destruction of the social room.

228. The Board also failed to call a special meeting of the Association to obtain the required 75% approval for rebuilding each of said new facilities as required by the Declaration.

229. Plaintiffs Phillips and Weiss seek a judgment declaring that the Board violated the Declaration in this regard.

## COUNT VII
### (Audit and Accounting)

230. For their seventh claim against Defendants Acacia on the Green Condominium Association and the current defendant-members of ACGAI's Board of Directors, Plaintiffs Phillips and Weiss incorporate as if fully rewritten herein paragraphs 1-229 above.

231. Plaintiffs also allege that due to Defendants Acacia on the Green Condominium Association, Inc. and each of the above-named defendant current or former unit-owner board members: Cohen, Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Miller, Rothman and Wachs, repeated failure to adopt and distribute to all unit owners a budget showing both

-53-

the income and expenses of both maintenance and reserve accounts and in having depleted

AGCAI's reserve funds, in part, to replace the obsolete swimming pool and to build a new

pavilion with $500,000 of borrowed money, there now is an urgent need to have the

Association's financial records audited beginning with the year 2012 (when defendant

Marvin Miller became the President of the Association and the Board) combined with an

accounting of how all Association money was spent, all as requested in detail in Plaintiffs'

eighth claim below.

232.    Unless and until a professional audit of the Association's financial records is done and an

accounting made of money the Association has spent is made, Plaintiffs will be unable to

know the full extent of their respective damages or financial risk.

**COUNT VIII**
**(Injunctive Relief)**

233.    For their eighth claim against Defendants, Acacia on the Green Condominium Association,

Inc. and each of the above-named defendant current unit-owner board members: Cohen,

Dettlebach, Doyle, Klein, Kleinfelter, Koplow, Licker, Lombardy, Rothman and Wachs,

Plaintiffs Phillips and Weiss incorporate as if fully rewritten herein paragraphs 1-232 above.

234.    Plaintiffs seek a judgment granting preliminary and permanent injunction against the

Association, enjoining and prohibiting its current Board of Directors from taking any further

actions or making any further decisions regarding the Acacia on the Green Condominium

Association, Inc. or any of its Unit Owners without first obtaining the permission of this

Court and being so constrained until a new Board of Directors can be elected and installed to

govern the Association after all current members of the Board are removed pursuant to R.C.

§5311.23(B).

-54-

235. Plaintiffs also seek a judgment granting an order on the Association requiring it to obtain an audit of the finances of the Association from a certified public accounting firm chosen by the Court (other than Zinner & Co. which the AGCAI Board has used in the past) at the expense of the Association.

236. Plaintiffs Phillips and Weiss have suffered irreparable harm in the nature of having the value of their respective units lessened by virtue of the Association's reserve fund now being funded with less money than is necessary to pay for the entire cost of the items of Common Elements, namely, the swimming pool, picnic pavilion and fitness center/card room, that were constructed in reliance on borrowed money with its increased cost of interest, as well as by the fact that uncertainty will exist as to the financial status of AGCAI until after an audit of its financial records has been completed and any and all of its new and potential liabilities have been determined.

237. Plaintiffs have no adequate remedy at law for many of the foregoing violations by the defendant AGCAI and its Board members.

238. Plaintiffs are likely to be successful on the merits of this case; the preliminary injunction will prevent irreparable harm caused to the Plaintiffs and other Unit Owners; and unless the Association is restrained, the Plaintiffs and other Unit Owners will be injured without any adequate remedy at law.

239. Pursuant to Ohio law, violations of an association's declaration or bylaws also constitute irreparable harm.

240. The defendant Association is not acting in compliance with its Declaration, By-Laws and the aforesaid Ohio and federal laws.

-55-

241.    Plaintiffs are entitled to a preliminary and permanent injunction pursuant to Civ.R. 65

because there is immediate and irreparable injury, loss and damage to Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment as follows:

1.    As to Count I, a judgment for Plaintiffs Phillips and the two Weiss trusts finding that

Defendants Scott D. Cohen, Richard N. Dettlebach, William A. Doyle, Jr., John F.

Klein, James N. Kleinfelter, Ronald A. Koplow, Alice B. Licker, Diane E.

Lombardy, Marvin N. Miller, Nina H. Rothman, and Amy W. Wachs, each

individually, and Defendant Acacia on the Green Condominium Association, Inc.,

knowingly, intentionally and/or recklessly breached their unit owner and board

member duties toward Plaintiffs by failing to properly and faithfully carry out their

respective duties in operating the Acacia on the Green Condominium Association,

Inc. as required by RC Chapter 5311, the AGC Declaration and By-Laws, and

thereby injuring Plaintiffs in amounts in excess of $25,000 each for compensatory

damages and additional sums to be determined by a jury for punitive damages, to be

proved at trial;

2.    As to Count II, a judgment for Plaintiffs Phillips and the two Weiss trusts finding

that the Association knowingly, intentionally and/or recklessly breached its corporate

fiduciary duties under R.C. Chapter 1702, resulting in injuries to Plaintiffs in

amounts in excess of $25,000 each, to be proved at trial;

3.    As to Count III, a judgment for Plaintiffs Phillips and the two Weiss trusts finding

that Defendant Acacia on the Green Condominium Association, Inc. knowingly,

intentionally and/or recklessly breached the contractual provisions of the Declaration

and By-Laws, resulting in injuries to said Plaintiffs in an amount in excess of
$25,000 compensatory damages each and additional sums to be determined by a jury
for punitive damages, to be proved at trial;

4.     As to Count IV, a judgment for Plaintiffs Gene Phillips and Stephen G. Weiss
finding that all defendants also violated their respective duties set forth in the Federal
Housing Act Amendments and the Americans with Disabilities Act, resulting in
injuries to said Plaintiffs in an amount in excess of $25,000 compensatory damages
each and additional sums to be determined by a jury for punitive damages, to be
proved at trial;

5.     As to Count V, a judgment for Plaintiffs Gene Phillips and Stephen G. Weiss finding
that all defendants violated their respective duties set forth in Ohio Revised Code,
section 4112.02(H), (I) and (J), resulting in injuries to said Plaintiffs in an amount in
excess of $25,000 compensatory damages each and additional sums to be determined
by a jury for punitive damages, to be proved at trial;

6.     As to Count VI, a declaratory judgment finding:

(A) that all Defendants except Flynn and Jevnikar failed to follow the requirements
to RC Chapter 5311 governing the operation of condominium properties in Ohio,
including:

        (i) the failure to annually adopt properly prepared financial budgets for
        several years, and

        (ii) the failure to timely prepare the aforesaid financial budgets, and

        (iii) the failure to annually submit properly prepared budgets for several years

-57-

to AGC's Unit Owners and members, and

(iv) the failure to submit such budgets prior to December 15th of each year, and

(v) the failure to seek the approval of not less than 75% of the voting power of unit owners attending a meeting called for the purpose of approving the destruction and replacement of the AGC swimming pool and Building 1 social room prior to building a new pool and fitness center/card room, and

(vi) the failure to amend the AGC Rules so as to recognize and allow the use of gas grills on units having adjoining concrete patios that meet the Ohio and Lyndhurst fire codes, as well as finding that these Plaintiffs have an easement to use gas grills as reasonably limited aforesaid;

(vii) the failure to build the new swimming pool, pavilion and fitness center/card room so as to make them accessible by handicapped or disabled persons as required by federal and Ohio law, and

(viii) the failure to censure Board members Marvin N. Miller and Richard N. Dettlebach who verbally and physically attacked unit owner Stephen G. Weiss during Association meetings and on the AGC property, as well as verbally insulting Plaintiff Phillips during Association meetings,

so that the entire Board must be replaced by the election of a new Board of Directors by AGC unit owners at a special election called and monitored by the Court for such purpose with none of the existing Board members deemed qualified to serve as a candidate for such office, and

-58-

(B) that as soon as the newly elected Board has reviewed the aforesaid audit report, it then be required to properly prepare a remaining calendar year 2019 budget of the estimated AGC income and expenses, both for maintenance and reserve fund purposes, with the estimated and separately identified monthly maintenance and reserve fund fees due from each unit owner for the remainder of the calendar year 2019; and

(D) a judgment declaring that the newly elected Board offer in writing to the AGC unit owners and the Association's members the choice of waiving the requirement to set aside reserves less than 10% of the newly established budget for the remainder of 2019; and

(E) that Defendant AGCAI be ordered to hire a new assistant Building Manager and Maintenance Supervisor to work with Defendants Lisa Flynn and Kenneth Jevnikar for a period of ninety (90) days or such longer or shorter period required for the new employees to have acquired the necessary knowledge of AGC's operations, at which time the Board may choose to terminate the employment of said Defendants; and

7. As to Count VII, grant Plaintiffs an injunction ordering Defendant Acacia on the Green Condominium Association, Inc. to have a professional audit performed by an independent accounting firm (other than Zinner & Co., AGCAI's current accountants) chosen by the Court of its financial records beginning with the year 2012 to the present with an accounting of how all money was spent; and

8. As to Count VIII, grant Plaintiffs a preliminary and permanent injunction against the Association prohibiting its current Board of Directors from taking any further actions

or making any further decisions regarding the Association or any of its Unit Owners without first obtaining the permission of this Court and being so constrained until a new Board of Directors can be elected and installed to govern the Association.

In addition, grant Plaintiffs a preliminary and permanent injunction requiring the Association's current Board of Directors (if the Court should decide not to order the election of a new Board) or, if new Board is elected, then such new Board to:

(A)    annually and timely prepare in a business-like manner the budget required by the AGC Declaration and By-Laws, as well as that required by RC § 5311.081(A)(1), including a reasonable estimate of the long-term capital needs of the condominium property and a reasonable estimate of the sum needed to fund the reserve account for the current year; and

(B)    allow each AGC unit owner having an adjoining concrete patio has an easement that was created in the Declaration that permits the use and requires the maintenance of gas grills, if used, on their respective patio, as long as it is used in accordance with Ohio and Lyndhurst fire codes and any reasonable rule hereafter adopted by the Association; and

(C)    require all contractors and vendors who are engaged to perform any new construction or repairs to AGC Common Elements on or in the condominium property comply with any and all applicable federal and Ohio laws that require accessibility for handicapped or disabled persons to said Common Elements; and

(D)    review the extent to which the AGC swimming pool may not be accessible for handicapped or disabled persons and determine the cost and time of correcting any such failure, with said cost being assessed to such and all of the individual Defendant Board members, jointly and severally, who are found to have served as members of the Board during the period when it was decided to replace the existing pool with a new one and who did not vote against said project without first submitting it to the unit owners for a vote of approval; and

(E)    to review the extent to which the AGC picnic pavilion, including its fixed gas grills, may violate the Ohio and/or Lyndhurst fire codes or may or may not be accessible for handicapped or disabled persons; and thereafter determine the cost of correcting any such failure, with said cost being assessed to such and all of the individual Defendants, jointly and severally,  who are found to have

-60-

served as approving members of the Board when it decided to build a new picnic pavilion with permanent gas grills without first submitting such project to a special meeting of the Unit Owners for the requisite approval, and thereafter requiring said offending Board member defendants to jointly and severally pay the cost of correcting said picnic pavilion to be in compliance with any and all applicable federal and Ohio fire code and handicap or disability laws; and

(F)     to review the extent to which the AGC's new fitness center/card room may not be accessible for handicapped or disabled persons and then to determine the cost of correcting any such failure, with said cost being assessed to such and all of the individual Defendants, jointly and severally, who are found to have served as members of the Board during the period when it was decided to replace the existing pool with a new one and who did not vote against said project without first submitting it to the unit owners for a vote of approval and who did not require them to comply with all applicable federal and Ohio laws; and

(G)     to adopt an internal operating procedure that requires any and all redecorating projects, whether undertaken by the Association with respect to Common Elements or each and every unit owner, that involves the *disturbing* or removal of any painted surface which may contain lead paint be done in a manner that complies with all applicable federal, Ohio and Lyndhurst hazardous waste laws and regulations; and

(H)     to take reasonable steps to adopt a policy that forbids any person from attacking, whether verbally, in person or in writing, any other unit owner or Association member, including belittling, being rude or otherwise failing to conduct himself or herself with respect toward such unit owner or member and establishes an appropriate punishment, including censure, a fine, removal from the Board, denial of voting rights as a Unit Owner, or even removal as a Unit Owner; and

(I)      to adopt a policy and procedures manual that contains some or all of the policies and procedures outlined in paragraph 65 above which, and or others, which said board agrees to serve as protocols to be followed (until amended or revoked) in executing its duties and responsibilities.

9.      For an award of attorney fees pursuant to RC §§ 5311.19, 4112.051(D) and 4112.16,

as wells as 42 U.S.C. § 3613(c)(2), and for interest, costs, expenses, and such other

relief as the Court deems just and equitable.

-61-

Respectfully submitted,

By: *Leonard F. Lybarger*

**Leonard F. Lybarger (0027904)**
Law office of Leonard F. Lybarger
547 East Washington Street
Chagrin Falls, Ohio 44022-4436
llybarger@lybargerlaw.net
Telephone   (440) 708-2000
Facsimile   (440) 600-7747

*Attorney for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on each claim and issue for which a jury is permitted.

*Leonard F. Lybarger*

**Leonard F. Lybarger (0027904)**
*Attorney for Plaintiffs*

Electronically Filed 05/02/2019 16:07 / / CV 19 914812 / Confirmation Nbr. 1698472 / CLSK1

## **VERIFICATION**

Gene B. Phillips, being first duly sworn, deposes and states that she is the first named plaintiff above and that she has read the foregoing allegations, including those pertaining to Stephen G. Weiss, all of which are true to the best of her information and belief.

_____
Gene B. Phillips

Sworn to before me and subscribed in my presence by Gene B. Phillips, a person who is personally known to me, on the ___ day of May, 2019.

_____
Leonard F. Lybarger

> Notary Public - Attorney at Law
> Commission does not expire.
> Ohio Revised Code, § 147.03

Stephen G. Weiss, Phillips, being first duly firstly sworn, deposes and states that he is the second named plaintiff above and that he has read the foregoing allegations, including those pertaining to Gene B. Phillips, all of which are true to the best of his information and belief.

_____
Stephen G. Weiss

Sworn to before me and subscribed in my presence by Stephen G. Weiss, a person who is personally known to me, on the ___ day May, 2019.

_____
Leonard F. Lybarger

-63-



